UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LISA FRANCESCA FERRARI, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>NATURAL PARTNERS, INC., et al.,<br><br>Defendants. | Case No. 15-CV-04787-LHK<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS**<br><br>Re: Dkt. Nos. 48, 49 |

Plaintiffs Lisa Francesca Ferrari ("Ferrari") and Joseph Michael LaBrash ("LaBrash") (collectively, "Plaintiffs"), acting pro se, filed this products liability action against Defendants ProThera, Inc. ("ProThera"), Klaire Labs, and Soho Flordis International ("Soho Flordis") (collectively, "ProThera Defendants"), as well as against Natural Partners, Inc. ("Natural Partners") (together with ProThera Defendants, "Defendants"). Before the Court are two motions to dismiss, one filed by ProThera Defendants and another filed by Natural Partners. ECF Nos. 48, 49. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court GRANTS in part and DENIES in part the motions to dismiss.

United States District Court
Northern District of California

# I.     BACKGROUND

## A.  Factual Background

This case arises out of Plaintiff Ferrari's alleged consumption of the enzyme supplements Interfase 60 and Interfase 120 (collectively, "Interfase").  Interfase is manufactured by Defendant ProThera, which was acquired by Defendant Soho Flordis in 2013.  ECF No. 37 (Second Amended Complaint, or "SAC"), ¶¶ 12, 15.  Defendant Klaire Labs, a division of ProThera, labels Interfase.  *Id.* ¶¶ 12, 14.

From approximately March 2012 to October 18, 2013, Ferrari ingested four capsules of Interfase per day.  *Id.* ¶¶ 12–13, 34, 38.  Ferrari purchased Interfase from ProThera and distributor Defendant Natural Partners.  *Id.* ¶ 12.  Ferrari took Interfase for its labeled purpose, which is "to normalize . . . intestinal microflora and achieve optimal gastrointestinal function."  *Id.* ¶¶ 28–29.

Ferrari stopped ingesting Interfase upon receiving a recall notice from Natural Partners and ProThera (the "First Recall Notice") on October 18, 2013.  *Id.* ¶¶ 13, 35.  The First Recall Notice recalled certain batches of Interfase that were contaminated with "small quantities of the antibiotic chloramphenicol."  *Id.* ¶¶ 16–17, Ex. H.  Chloramphenicol is a carcinogen that is also known to cause other adverse side effects, including unusual bleeding, unusual bruising, hypotension, cardiac collapse, abdominal pain, and liver damage.  *Id.* ¶¶ 18, 30, 33.  Chloramphenicol is not approved for any oral use by the U.S. Food and Drug Administration ("F.D.A.").  *Id.* ¶ 20.  The First Recall Notice stated, "Adverse health consequences related to the use of these products are highly unlikely, but supplements should not contain any detectable amounts of this material."  *Id.* Ex. H.

After receiving the First Recall Notice, Ferrari "carefully verified that the Klaire Labs Interfase bottles, from which she had been consuming the Interfase capsules[,] were among the recalled lots."  *Id.* ¶ 41; *see also id.* ¶ 16.  Pursuant to the instructions in the First Recall Notice, Ferrari returned the recalled Interfase bottles to Natural Partners.  *Id.* ¶ 41.

On November 8, 2013, ProThera emailed Ferrari with additional information about the recall.  *Id.* ¶ 45.  ProThera represented that the recall was "Class III," which means that "exposure

United States District Court
Northern District of California

[is] not likely to cause adverse health consequences." *Id.* Ex. I.  However, in the week of November 20, 2013, the F.D.A. publicly reported the recall as "Class II." *Id.* Ex. K.  In contrast to a Class III recall, a Class II recall involves "a situation in which use of or exposure to a violative product may cause temporary or medically reversible adverse health consequences or where the probability of serious adverse health consequences is remote." *Id.* ¶ 50.

On November 22, 2013, Ferrari received another recall notice from Natural Partners and ProThera (the "Second Recall Notice"). *Id.* ¶ 55, Ex. J.  The Second Recall Notice, like the First Recall Notice, stated that, "Adverse health consequences related to the use of these products is highly unlikely, but supplements should not contain any detectable amounts of this material." *Id.*

Prior to receiving the First Recall Notice, Ferrari began suffering from a variety of ailments "consistent with chloramphenicol poisoning," including "acute onset incessant tinnitus, abdominal bloating, poor appetite, unusual bruising, [and] liver pain." *Id.* ¶ 39.  According to the SAC, the First and Second Recall Notices misled Ferrari's doctor that chloramphenicol was unlikely to be the cause of Ferrari's injuries. *Id.* ¶ 42, 55–56.  By way of example, on one visit, Ferrari's doctor quoted from the First Recall Notice that it was "highly unlikely" adverse health consequences would occur from ingesting the contaminated Interface. *Id.* ¶ 42.  Consequently, there was a delay in the identification of chloramphenicol poisoning as the cause of Ferrari's injuries, which led to "further medical complications, further painful side effects, psychological turmoil," and other injuries. *Id.* ¶ 66(f).  Due to Ferrari's injuries, LaBrash, Ferrari's spouse, alleges loss of consortium, love, sleep, companionship, comfort, and more. *Id.* ¶ 101.

**B.  Procedural History**

Plaintiffs filed this action pro se on October 16, 2015.  ECF No. 1.  ProThera Defendants moved to dismiss the complaint on February 5, 2016, ECF No. 8, and Natural Partners moved to dismiss on February 25, 2016, ECF No. 15.

On February 25, 2016, Plaintiffs filed a First Amended Complaint.  ECF No. 24.  On March 15, 2016, pursuant to the stipulation of the parties, the Court granted Plaintiffs leave to file the SAC.  ECF No. 33.  That same day, in light of the First Amended Complaint and the

Case No. 15-CV-04787-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

United States District Court
Northern District of California

1    anticipated SAC, the Court denied Defendants' motions to dismiss as moot.  ECF No. 34.

2         Plaintiffs filed the SAC on April 15, 2016.  ECF No. 37.[1]  Plaintiffs allege five causes of

3    action.  Specifically, Ferrari asserts claims for (1) strict liability, (2) negligence, (3) breach of

4    express warranty, and (4) breach of implied warranty.  *Id.* ¶¶ 61–99.  LaBrash asserts one cause of

5    action for loss of consortium.  *Id.* ¶¶ 100–01.

6         On May 13, 2016, Defendants filed the instant motions to dismiss.  ECF No. 48 ("NP

7    Mot."); ECF No. 49 ("ProThera Mot.").  That same day, ProThera Defendants joined Natural

8    Partners's motion to dismiss, and Natural Partners joined ProThera Defendants' motion to dismiss.

9    ECF Nos. 50, 52.  Plaintiffs opposed both motions on June 1, 2016, five days past the 14-day

10   deadline imposed by Civil Local Rule 7-3(a).  ECF Nos. 56, 57.  On June 3, 2016, Natural

11   Partners replied.  ECF No. 59 ("NP Reply").  On June 7, 2016, ProThera Defendants replied, ECF

12   No. 60 ("ProThera Reply"), and joined Natural Partners's reply, ECF No. 61.  The replies objected

13   to Plaintiffs' untimely oppositions.

14        Plaintiffs did not seek leave to file untimely oppositions, nor did they otherwise identify

15   any good cause for the delay.  Nonetheless, the Court finds that resolving the motions to dismiss

16   on the merits is the appropriate course of action.  First, the Court recognizes that Plaintiffs are

17   "representing [themselves] pro se, which entitles [them] to a certain degree of leniency so as to

18   ensure that [their] case is justly resolved on its merits rather than on the basis of procedural

19   technicalities to the extent possible."  *Peinado v. City & Cty. of S.F.*, 2013 WL 163473, at *5

20   (N.D. Cal. Jan. 15, 2013) (internal quotation marks omitted).  Second, resolution on the merits,

21   including considering the untimely oppositions, is more likely to "secure the just, speedy, and

22   inexpensive determination" of this case and therefore advance the goals of the Federal Rules of

23   Civil Procedure.  *See* Fed. R. Civ. P. 1; *see also Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir.

24   2000) (en banc) (holding that the purpose of pleading rulings is "to facilitate decision on the

25

26   _____

27   [1] Plaintiffs filed two documents labeled the "Second Amended Complaint."  *See* ECF Nos. 35, 37.
     These documents appear to be identical except that ECF No. 37 is signed while ECF No. 35 is
28   unsigned.  The Court relies upon the signed Second Amended Complaint, ECF No. 37.

merits, rather than on the pleadings or technicalities").  Lastly, the Court finds that Defendants are not prejudiced by the Court's consideration of Plaintiffs' untimely oppositions, as Defendants were able to file replies that substantively addressed the oppositions.

For purposes of resolving the instant motions to dismiss, the Court does not consider any of Plaintiffs' new factual allegations contained in Plaintiffs' oppositions.  *See Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.").  However, the Court will consider Plaintiffs' new factual allegations for the limited purpose of determining whether Plaintiffs would be able to cure any deficiencies in the SAC through amendment.  *See id.* ("Facts raised for the first time in plaintiff's opposition papers should be considered by the court in determining whether to grant leave to amend or to dismiss the complaint with or without prejudice.").

## II.    LEGAL STANDARD

### A.  Rule 12(b)(1)

A defendant may move to dismiss an action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  While lack of statutory standing requires dismissal for failure to state a claim under Rule 12(b)(6), lack of Article III standing requires dismissal for want of subject matter jurisdiction under Rule 12(b)(1).  *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).  "A Rule 12(b)(1) jurisdictional attack may be facial or factual."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."  *Id.*  The Court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction."  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).  "[I]n a factual attack," on the other hand, "the challenger disputes the truth

United States District Court
Northern District of California

5

of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. "In resolving a factual attack on jurisdiction," the Court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* The Court "need not presume the truthfulness of the plaintiff's allegations" in deciding a factual attack. *Id.*

Once a defendant has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of establishing the Court's jurisdiction. *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). The plaintiff carries that burden by putting forth "the manner and degree of evidence required" by whatever stage of the litigation the case has reached. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). At the motion to dismiss stage, Article III standing is adequately demonstrated through allegations of "specific facts plausibly explaining" why the standing requirements are met. *Barnum Timber Co. v. EPA*, 633 F.3d 894, 899 (9th Cir. 2011).

### B. Rule 12(b)(6) Motion to Dismiss

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6). Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The Court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see*

United States District Court
Northern District of California

6

1    *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's

2    complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion

3    for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995).  Nor must the

4    Court "assume the truth of legal conclusions merely because they are cast in the form of factual

5    allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam).  Mere

6    "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to

7    dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

8    ### C.  Leave to Amend

9        If the Court concludes that the complaint should be dismissed, it must then decide whether

10   to grant leave to amend.  Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to

11   amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose

12   of Rule 15. . . [is] to facilitate decision on the merits, rather than on the pleadings or

13   technicalities." *Lopez*, 203 F.3d at 1127 (ellipsis in original).  Nonetheless, a district court may

14   deny leave to amend a complaint due to "undue delay, bad faith or dilatory motive on the part of

15   the movant, repeated failure to cure deficiencies by amendments previously allowed, undue

16   prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of

17   amendment."  *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

18   ## III.    DISCUSSION

19       Defendants' motions to dismiss present substantially overlapping arguments.  First,

20   Defendants move to dismiss Ferrari's four causes of action on the grounds that the SAC fails to

21   allege that Ferrari's ingestion of contaminated Interfase caused Ferrari's injuries.  Second,

22   Defendants challenge Plaintiffs' standing to assert claims against Natural Partners, and raise

23   additional arguments specific to each of Ferrari's causes of action.  Third, Defendants contend that

24   LaBrash's loss of consortium claim must be dismissed because his claim is derivative of Ferrari's

25   claims, which must be dismissed.  Fourth, Defendants challenge Plaintiffs' claim for damages.

26   Lastly, Defendants move in the alternative for a more definite statement pursuant to Federal Rule

27   of Civil Procedure 12(e).  The Court addresses these issues in turn.

28

United States District Court
Northern District of California

**A. Causation**

Defendants challenge Plaintiff Ferrari's four causes of action, and Ferrari's standing, on the basis that Ferrari fails to adequately allege that Interfase caused her injuries. In particular, Defendants argue that the SAC does not sufficiently allege that (1) Ferrari ingested contaminated Interfase, and (2) the contaminated Interfase caused Ferrari's injuries. The Court considers these arguments respectively.

First, Defendants contend that the SAC fails to allege that Ferrari consumed contaminated Interfase from the recalled lots. *See, e.g.*, NP Mot. at 10 ("Plaintiffs fail to allege facts confirming that Plaintiff Ferrari consumed batches of Interfase 120 and Interfase 60 subject to the recall . . . ."); ProThera Mot. at 8 ("Plaintiffs' SAC is vague and ambiguous in tying the InterFase capsules allegedly consumed by Ms. Ferrari to a lot subject to the October 2013 recall."). This argument is clearly contradicted by the SAC. The SAC specifically alleges, "Certain batches of Interfase that were purchased by plaintiff Ferrari and ingested by plaintiffs were identified as being from the contaminated lots manufactured by ProThera, Inc.," and "Plaintiff Ferrari carefully verified that the Klaire Labs Interfase bottles, from which she had been consuming the Interfase capsules[,] were among the recalled lots." SAC ¶¶ 16, 41. In addition, the SAC alleges that Interfase was recalled because it was contaminated with chloramphenicol. *Id.* ¶¶ 17, Exs. H–J. Indeed, Natural Partners recognizes that "Plaintiffs allege that Ferrari ordered and consumed contaminated Interfase 120 and Interfase 60 that were later the subject of a voluntary recall . . ." NP Mot. at 5. The SAC adequately pleads that Ferrari consumed Interfase from the recalled lots contaminated with chloramphenicol.

Second, Defendants argue that Ferrari fails to show that her injuries were caused by ingesting Interfase contaminated with chloramphenicol. However, the SAC alleges that chloramphenicol can cause a number of injuries suffered by Ferrari, including unusual bleeding, unusual bruising, abdominal distention, loss of appetite, weight loss, liver pain, and mitochondrial dysfunction. *Compare* SAC ¶¶ 24, 26, 30 (side effects of chloramphenicol), *with id.* ¶¶ 39, 67 (Ferrari's injuries). The SAC notes that "some peer-reviewed studies demonstrate severe

Case No. 15-CV-04787-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

consequences, some life threatening after only one dose of chloramphenicol." *Id.* ¶ 98; *see also id.* ¶¶ 21, 23–24, 26, 30, 33, Exs. B–E (citing FDA and other published research on the adverse consequences of ingesting chloramphenicol). In addition, the SAC asserts that Ferrari's injuries were caused by ingesting Interfase contaminated with chloramphenicol. *See id.* ¶¶ 62, 66–67, 69–71, 74.[2]

Defendants dispute the above allegations on three bases. First, Defendants contend that Ferrari must provide evidence that a doctor diagnosed her with chloramphenicol poisoning. Second, ProThera Defendants dispute that small amounts of chloramphenicol can cause Ferrari's injuries. For example, ProThera Defendants discount one of the scientific studies offered in the SAC on the grounds that the study "was an *in vitro* basic science study involving a highly specialized cell culture line . . . and was performed using a *therapeutic* dose (not *trace amounts*) of chloramphenicol." ProThera Reply at 6. Thus, ProThera Defendants contend that the study does not show that ingesting trace amounts of chloramphenicol can cause mitochondrial dysfunction in humans. *Id.* Lastly, Defendants argue that the SAC alleges that Ferrari's doctor told her that it was "highly unlikely" that Ferrari's injuries were caused by contaminated Interfase.

As to Defendants' first two counterarguments, the Court is unpersuaded by Defendants' call for additional evidence. For purposes of a motion to dismiss, Plaintiffs must plead only "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. In the instant case, as discussed above, the SAC alleges—without limitation to particular amounts of

---

[2] ProThera Defendants ask the Court to disregard or strike SAC ¶¶ 60, 66 as "fraud-upon-the-FDA type allegations that are preempted by federal law." ProThera Mot. at 8. However, the single case cited by ProThera Defendants with respect to this argument, *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341, 352 (2001), does not support striking individual allegations in a pleading. *Buckman* addresses federal preemption of *claims*, not of individual allegations. ProThera Defendants do not argue that any of Plaintiffs' claims are preempted by federal law, and provide no authority to strike allegations supporting non-preempted claims. Moreover, courts regularly allow plaintiffs to pursue non-preempted claims even though the underlying allegations are also asserted with respect to preempted claims. *See, e.g.*, *Eidson v. Medtronic, Inc. ("Eidson I")*, 40 F. Supp. 3d 1202, 1228–33 (N.D. Cal. 2014) (permitting state law cause of action for strict liability failure to warn to proceed on one non-preempted theory, although finding that two other theories of strict liability failure to warn are preempted). Accordingly, the Court declines to disregard or strike SAC ¶¶ 60, 66.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   chloramphenicol—that chloramphenicol *can* cause certain injuries suffered by Ferrari.[3]  In

2   addition, the SAC alleges that ingestion of chloramphenicol *did* cause the injuries suffered by

3   Ferrari.  While ProThera Defendants contest the truth of these allegations, ProThera Defendants

4   cite only "common sense," not legal authority, to argue that the SAC's causation allegations are

5   insufficient.  ProThera Mot. at 6.  Moreover, the Court may not weigh the scientific evidence

6   offered in the SAC.  *See Jones v. Johnson*, 781 F.2d 769, 772, n. 1 (9th Cir.1986) ("[A]ny

7   weighing of the evidence is inappropriate on a 12(b)(6) motion"), *overruled on other grounds by*

8   *Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014).  Rather, the Court must "accept factual

9   allegations in the complaint as true," *Manzarek*, 519 F.3d at 1031, and "construe pro se pleadings

10  liberally," *Bernhardt v. L.A. Cty.*, 339 F.3d 920, 925 (9th Cir. 2003).

11      In light of the Court's duty at the motion to dismiss stage, and the allegations in the SAC,

12  the Court finds that the SAC adequately alleges that Ferrari's injuries resulted from the ingestion

13  of Interfase contaminated with chloramphenicol.  *See Bockrath v. Aldrich Chem. Co.*, 21 Cal. 4th

14  71, 80 (1999) (noting plaintiff sufficiently alleges causation by alleging that "he suffers from a

15  specific illness, and that each toxin that entered his body was a substantial factor in bringing

16  about, prolonging, or aggravating that illness"); *see also Tellez-Cordova v. Campbell-*

17  *Hausfeld/Scott Fetzger Co.*, 129 Cal. App. 4th 577, 586 (2004) (causation adequately alleged

18  when the complaint alleged that the products did cause injury).  Whether Ferrari has sufficient

19  documentation of her alleged injuries, and of the causal link between her injuries and

20  chloramphenicol, is more appropriately decided at summary judgment.

21      As to Defendants' final counterargument, the Court rejects Defendants' reliance on the

22  supposed statements of Ferrari's doctor to undermine causation.  According to Defendants, the

23  SAC alleges that Ferrari's doctor told Ferrari that it was "highly unlikely" that Ferrari's injuries

24

---

25  [3] ProThera Defendants focus on the fact that 20 cumulative grams of chloramphenicol are required
    to be a safety concern for bone marrow suppression, and Ferrari did not ingest 20 grams of
26  chloramphenicol.  *See* ProThera Mot. at 4–5 (citing SAC Ex. I).  However, Ferrari does not claim
    bone marrow suppression as one of her injuries.  *See generally* SAC.  Thus, the amount of
27  chloramphenicol needed to cause bone marrow suppression does not undermine the SAC's
    allegations that Ferrari's ingestion of a smaller amount of chloramphenicol caused other injuries.

28

10

United States District Court
Northern District of California

1   were caused by the contaminated Interface.  However, the SAC alleges that Ferrari's doctor quoted

2   the "highly unlikely" language from Defendants' own First Recall Notice.  SAC ¶ 42.  The SAC

3   then contends that Ferrari's doctor's reliance on this First Recall Notice language—which

4   allegedly downplays the risk of injury from ingesting contaminated Interface—delayed the

5   diagnosis of chloramphenicol as the cause of Ferrari's injuries.  *Id.*  In turn, this delay resulted in

6   additional expenses and medical complications for Ferrari.  *Id.* ¶¶ 42–43, 55–56, 60, 66, 69, 74

7   ("Defendants ProThera and Natural Partners negligently communicated conflicting recall letters . .

8   . causing plaintiff Ferrari's medical practitioners to not probe deeper into the hidden causation of

9   chloramphenicol poisoning . . . .").  Accordingly, the statements of Ferrari's doctor support the

10  allegation that Ferrari's injuries were prolonged as a result of the First Recall Notice.  *See*

11  *Bockrath*, 21 Cal. 4th at 80 (stating that causation may exist when a defendant's action prolongs or

12  aggravates the plaintiff's illness).

13         In sum, the Court concludes that Plaintiffs have adequately alleged that Ferrari ingested

14  recalled Interface contaminated with chloramphenicol, and that the contaminated Interface caused

15  her injuries.  With these conclusions in mind, the Court turns to Plaintiffs' standing and the

16  individual causes of action.

17         **B.  Article III Standing**

18         In Natural Partners's motion, joined by ProThera Defendants, Defendants argue that

19  Plaintiffs lack standing because there are no facts alleged to support that Plaintiffs suffered an

20  injury caused by Natural Partners.  NP Mot. at 3–5.  For the reasons stated below, the Court finds

21  that Plaintiffs have adequately pled standing to assert claims against Natural Partners.  Defendants

22  do not challenge Plaintiffs' standing to assert claims against ProThera Defendants.

23         Article III of the U.S. Constitution requires a plaintiff to plead and prove that he or she has

24  suffered sufficient injury to satisfy the "case and controversy" requirement.  *See Clapper v.*

25  *Amnesty Int'l USA*, 133 S. Ct. 1138, 1146 (2013) ("One element of the case-or-controversy

26  requirement is that plaintiffs 'must establish that they have standing to sue.'" (quoting *Raines v.*

27  *Byrd*, 521 U.S. 811, 818 (1997))).  The U.S. Supreme Court has further clarified that standing

28

Case No. 15-CV-04787-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

1   means a plaintiff must plead and prove that the plaintiff "(1) suffered an injury in fact, (2) that is

2   fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by

3   a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). The Court

4   first addresses whether Ferrari meets these requirements, then LaBrash.

5   As to Ferrari's injury, Natural Partners contends that the SAC fails to "identify[] Ferrari's

6   specific injuries," and instead offers "only generalized and conclusory statements of an alleged

7   injury to Ferrari." NP Mot. at 4–5. However, the SAC alleges that Ferrari suffered specific

8   ailments after ingesting the contaminated Interfase, including "unusual bruising, unusual bleeding,

9   agonizing liver pain, abdominal distension, headaches, loss of weight, muscle flaccidity, a

10   gallbladder polyp, a pancreatic cyst, excessive fatigue, incessant tinnitus, peripheral neuropathy,

11   nutritional deficiencies, pathogenic overgrowth and severe dysbiosis of the microbiome, [and]

12   liver dysfunction." SAC ¶ 67; *see also id.* ¶¶ 39, 70. Moreover, Ferrari asserts that the delay in

13   identifying chloramphenicol as the cause of her injuries "caused further medical complications,

14   further painful side effects, psychological turmoil, loss of income, additional medical procedures,

15   additional medical expenses, canceled airline travel, canceled attendance to professional

16   conferences, all causing additional frustration and anguish." *Id.* ¶¶ 66(f).

17   Physical injuries traditionally give rise to injury in fact. *Covington v. Jefferson Cty.*, 358

18   F.3d 626, 638 (9th Cir. 2004) (finding allegations of physical injury, including "watering eyes and

19   burning noses" establish injury in fact); *Backus v. Gen. Mills, Inc.*, 122 F. Supp. 3d 909, 919 (N.D.

20   Cal. 2015) ("A physical injury is a traditionally recognized injury giving rise to Article III

21   standing."). Moreover, "palpable economic injuries have long been recognized as sufficient to lay

22   the basis for standing." *Sierra Club v. Morton*, 405 U.S. 727, 733 (1972). Taking Ferrari's

23   allegations of physical injury and medical expenses as true—as the Court must for purposes of

24   Natural Partners's facial challenge to standing, *see Leite*, 749 F.3d at 1121—Ferrari has

25   sufficiently alleged injury in fact.

26   As to causation, discussed in Section III.A above, Ferrari asserts that she purchased

27   Interfase from Natural Partners and ProThera; that she ingested Interfase contaminated with

United States District Court
Northern District of California

28

12

Case No. 15-CV-04787-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

United States District Court
Northern District of California

chloramphenicol; and that chloramphenicol can and did cause her injuries.  SAC ¶¶ 16, 26, 30, 36,

41.  In addition, Ferrari alleges that Natural Partners's and ProThera's First and Second Recall

Notices, which indicated that "adverse health consequences related to the use of [recalled

Interfase] are highly unlikely," delayed the diagnosis and treatment of Ferrari's chloramphenicol

poisoning.  *Id.* ¶¶ 53, 55 (emphasis omitted).  This delay "caused further medical complications,

further painful side effects, psychological turmoil, loss of income, additional medical procedures,

additional medical expenses, canceled airline travel, canceled attendance to professional

conferences, all causing additional frustration and anguish."  *Id.* ¶¶ 66(f).  Thus, according to the

SAC, Ferrari suffered physical injuries and economic loss because Natural Partners distributed a

contaminated product and provided misleading information about the potential consequences of

ingesting that contaminated product.  These allegations adequately show that Ferrari's injuries are

"fairly traceable" to Natural Partners.  *See In re iPhone Application Litig.*, 844 F. Supp. 2d 1040,

1055–56 (N.D. Cal. 2012) (injury is fairly traceable to defendants' conduct when the complaint

"assert[s] conduct by Defendants which directly or indirectly led to the alleged harm").

Lastly, Ferrari's injuries are redressable because monetary damages could compensate

Ferrari for her alleged harms.  *See Novin v. Fong*, 2014 WL 6956923, at *5 (N.D. Cal. Dec. 8,

2014).  Thus, Ferrari has adequately alleged standing to sue Natural Partners.

As to Plaintiff LaBrash, the SAC alleges that LaBrash "has suffered and is reasonably

certain to suffer in the future the loss of consortium, love, sleep, companionship, comfort,

affection, society, solace, support, enjoyment of sexual relations and physical assistance in the

operation and maintenance of the home" due to Ferrari's injuries.  SAC ¶ 101.  Labrash's loss of

consortium claim is derivative of and dependent on Ferrari's claims.  *Calatayud v. California*, 18

Cal. 4th 1057, 1060 n. 4 (1998).  Given that Ferrari has adequately alleged injury fairly traceable

to Natural Partners's conduct, the Court finds that Labrash's allegations of derivative injury are

sufficient to support standing.  *See Andrews v. Cty. of Hawaii*, 2012 WL 425167, at *8 (D. Haw.

Feb. 9, 2012) (allegations of loss of consortium are sufficient to establish Article III standing);

*Eidson I*, 40 F. Supp. 3d at 1237 (adjudicating loss of consortium claim).  Consequently, the Court

13

1   DENIES Natural Partners's motion to dismiss based on lack of standing.

2   **C. Strict Liability**

3       The Court now considers in more detail the five individual causes of action alleged in the

4   SAC.  Ferrari's first cause of action is for strict liability.  In California, "[a] manufacturer is

5   strictly liable in tort when an article he places on the market, knowing that it is to be used without

6   inspection for defects, proves to have a defect that causes injury to a human being."  *Vandermark*

7   *v. Ford Motor Co.*, 61 Cal. 2d 256, 260–61 (1964).  Strict liability has since been expanded to

8   retailers and distributors.  *Id.* at 262–63; *Silverhart v. Mount Zion Hosp.*, 20 Cal. App. 3d 1022,

9   1026 (1971).  Strict liability may be imposed for three types of product defects: manufacturing

10  defects, design defects, and "warning defects," i.e., failures to warn.  *O'Neil v. Crane Co.*, 53 Cal.

11  4th 335, 347 (2012) (internal quotation marks omitted).

12      Although Plaintiffs do not articulate the theory underlying Ferrari's strict liability claim in

13  the "strict liability" section of the SAC, other portions of the SAC allege a design defect, a

14  manufacturing defect, and failure to warn.  *See Bernhardt*, 339 F.3d at 925 (stating the court has

15  "a duty to construe pro se pleadings liberally"); *Eidson v. Medtronic, Inc.*, 981 F. Supp. 2d 868,

16  888 (N.D. Cal. 2013) (examining factual background of complaint to determine specifics of the

17  theory of liability).  Construed liberally, Plaintiffs allege that (1) Interfase was designed to

18  improperly contain chloramphenicol, (2) certain batches of Interfase were contaminated with

19  chloramphenicol during the manufacturing process, and (3) Defendants should have warned those

20  taking contaminated Interfase of the danger of ingesting chloramphenicol.  Plaintiffs also allege

21  that ProThera manufactured the contaminated Interfase, and that Ferrari purchased Interfase from

22  both ProThera and Natural Partners.

23      Natural Partners, joined by ProThera Defendants, moves to dismiss Plaintiffs' strict

24  liability claim on the grounds that Plaintiffs fail to identify which defendant is responsible for

25  which defect.  NP Mot. at 11.  However, "[s]ince the liability is strict it encompasses defects

26  regardless of their source."  *Vandermark*, 61 Cal. 2d at 261.  Thus, as the manufacturer, ProThera

27  has the "duty to have its [products] delivered to the ultimate purchaser free from dangerous

28

United States District Court
Northern District of California

14

defects, [and] it cannot escape liability on the ground that the defect . . . may have been caused by something one of its authorized dealers did or failed to do." *Id.* at 261 ("These rules focus responsibility for defects . . . on the manufacturer of the completed product, and they apply regardless of what part of the manufacturing process the manufacturer chooses to delegate to third parties."). In addition, "as a retailer engaged in the business of distributing goods to the public, [Natural Partners] is strictly liable in tort for personal injuries caused by defects in [products] sold by it." *Id.* at 263; *see also Hensley-Maclean v. Safeway, Inc.*, 2014 WL 1364906, at *2–3 (N.D. Cal. Apr. 7, 2014) (noting that the retailer Safeway may be strictly liable for failure to warn of a recall of tainted food products sold by Safeway). In the instant case, the SAC alleges that Ferrari suffered injuries from a product manufactured by ProThera and distributed by ProThera and Natural Partners. *See* SAC ¶¶ 12, 41, 62, 66. The SAC also alleges that Ferrari's injuries were aggravated, and additional expenses incurred, due to ProThera's and Natural Partners's inadequate warnings in the recall notices. *See id.* ¶¶ 42–43, 46, 48, 52, 55–57, 66. The Court concludes that Plaintiffs have sufficiently alleged design, manufacturing, and failure to warn defects, and that Defendants would be liable for Ferrari's injuries resulting from those defects. Accordingly, the Court DENIES Defendants' motions to dismiss Plaintiffs' claim for strict liability.

### D. Negligence

The second cause of action alleges that Defendants were negligent. Plaintiffs offer four negligence theories: (1) negligent design of Interfase; (2) negligent manufacture of Interfase; (3) negligent testing of Interfase; and (4) failure to warn of defects in Interfase. To state a claim for negligence, Ferrari must allege: (1) the defendant's legal duty of care to the plaintiff; (2) the defendant's breach of duty; (3) injury to the plaintiff as a result of the breach; and (4) damage to the plaintiff. *See Hoyem v. Manhattan Beach City Sch. Dist.*, 22 Cal. 3d 508, 513 (1978). Natural Partners contests the duty of care, breach, and causation factors, while ProThera Defendants contest only causation.[4] The Court addresses the negligence claims against Natural Partners and

---

[4] Natural Partners also argues that Plaintiffs' opposition to Natural Partners's motion to dismiss abandons Ferrari's negligence claim, as well as her express and implied warranty claims. NP

United States District Court
Northern District of California

1    ProThera Defendants, respectively.

2         As to Natural Partners, the Court finds that Plaintiffs have adequately alleged a negligence

3    claim based on failure to warn.  In California, the general rule is that "all persons have a duty to

4    use ordinary care to prevent others from being injured as the result of their conduct."  *Conte v.*

5    *Wyeth, Inc.*, 168 Cal. App. 4th 89, 103 (2008) (quoting *Randi W. v. Muroc Joint Unified Sch.*

6    *Dist.*, 14 Cal. 4th 1066, 1077 (1997)); *see also Hensley-Maclean*, 2014 WL 1364906, at *3–6

7    (finding that retailer owed a post-sale duty of care to purchaser, and thus had duty to warn of

8    product recall).  The SAC alleges that Natural Partners breached that duty of care by failing to

9    warn Ferrari of the danger of consuming contaminated Interfase.  Specifically, Natural Partners

10   emailed Ferrari the First and Second Recall Notices on October 18, 2013 and November 22, 2013,

11   respectively, which were signed by Natural Partners and ProThera.  SAC ¶¶ 35, 55, Ex. H, Ex. J.

12   According to the SAC, these recall notices were negligently drafted because the notices minimize

13   the risk of harm from ingesting the contaminated Interfase.  *Id.* ¶¶ 42–43, 48, 55–57, 66.  Natural

14   Partners does not dispute that the recall notices were inadequate.  As a result of the alleged

15   misinformation in the recall notices, Ferrari's diagnosis and treatment were delayed, which

16   "caused further medical complications, further painful side effects, psychological turmoil, loss of

17   income, additional medical procedures, additional medical expenses, canceled airline travel,

18   canceled attendance to professional conferences, all causing additional frustration and anguish."

19   *Id.* ¶¶ 66(f).  Accordingly, the SAC adequately alleges that Natural Partners breached a duty of

20   care to Ferrari by negligently failing to warn of the danger of consuming contaminated Interfase,

21   which caused harm to Ferrari.

22        However, Plaintiffs have failed to allege that Natural Partners acted negligently with

23   respect to the design, manufacture, or testing of Interfase.  Indeed, there is no indication that

24

25   _____

26   Reply at 3–4.  This argument is meritless.  Plaintiffs' opposition specifically mentions each of
     these claims, and responds to Natural Partners's arguments on the duty of care and causation.
27   ECF No. 56 at 5–19.  Accordingly, Plaintiffs did not abandon any claims.  *See Campbell v. Feld*
     *Entm't*, Inc., 75 F. Supp. 3d 1193, 1204 (N.D. Cal. 2014) (finding claims abandoned when
28   plaintiffs "make no argument in support" of the claims and do not "mention them").

Case No. 15-CV-04787-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

United States District Court
Northern District of California

1  Natural Partners had any involvement at all in the design, manufacture, or testing of Interfase.  *See*

2  *generally* SAC.  Rather, Natural Partners was an Interfase distributor and had a role in managing

3  the recall.  *Id.* ¶¶ 12, 35, 41.  Although the SAC alleges that ProThera had a duty "to provide a

4  reasonably safe product in design, testing for ingredients, and manufacture," no such allegation is

5  made as to Natural Partners.  *Id.* ¶ 66(m).   Accordingly, the Court concludes that Plaintiffs have

6  not alleged that Natural Partners acted negligently with respect to the design, testing, or

7  manufacture of Interfase.  Ferrari thus fails to state a negligence claim against Natural Partners

8  based on a design, testing, or manufacturing defect theory.

9       ProThera Defendants challenge only the causation element of Plaintiffs' negligence claim.

10  *See* ProThera Mot. at 3–6.  As a preliminary matter, the Court agrees that ProThera Defendants

11  owed a duty of care to Ferrari, and that Ferrari has adequately alleged breach of that duty of care

12  through negligent design, testing, and manufacture of Interfase, which resulted in the

13  contamination of certain batches of Interfase with chloramphenicol.  *See, e.g.*, SAC ¶ 66.  In

14  addition, as with Natural Partners, the SAC adequately alleges that ProThera Defendants

15  negligently failed to warn of the risks of ingesting Interfase contaminated with chloramphenicol.

16  Indeed, in addition to the First and Second Recall Notices, ProThera Defendants sent Ferrari

17  additional information about the recall on November 8, 2016, which the SAC alleges was equally

18  inadequate to warn Ferrari of the dangers of ingesting contaminated Interfase.  *Id.* ¶ 45–46, 52, 56,

19  59–60.  Further, the Court rejects ProThera Defendants' challenge to causation.  As discussed in

20  Section III.A, above, Ferrari adequately alleges that she consumed Interfase contaminated with

21  chloramphenicol and that chloramphenicol could and did cause her injuries.

22       Accordingly, the Court GRANTS Natural Partners's motion to dismiss to the extent that

23  Ferrari's negligence claim is based on Natural Partners's design, manufacture, or testing of

24  Interfase.  Although the Court is doubtful, in light of the other allegations in the SAC, that

25  Plaintiffs can plead facts curing the deficiencies in these theories, the Court is mindful that the

26  "rule favoring liberality in amendments to pleadings is particularly important for the pro se

27  litigant."  *See Lopez*, 203 F.3d at 1127, 1131 (holding that "a district court should grant leave to

28

17

1    amend . . . unless it determines that the pleading could not possibly be cured by the allegation of

2    other facts" (internal quotation marks omitted)).   Accordingly, Ferrari's negligence claim based on

3    Natural Partners's design, manufacture, and testing of Interfase is dismissed with leave to amend.

4    The Court DENIES Natural Partners's motion to dismiss to the extent that Ferrari's claim is based

5    on negligent failure to warn.   In addition, the Court DENIES ProThera Defendants' motion to

6    dismiss Ferrari's negligence claim.

7        **E.   Breach of Express Warranty**

8           Ferrari's third cause of action is for breach of express warranty.   SAC ¶¶ 81–89.   To

9    prevail on a breach of express warranty claim, Plaintiffs must prove that Defendants made

10   "affirmations of fact or promise" or a "description of the goods" that became "part of the basis of

11   the bargain."   *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1227 (2010); Cal. Com.

12   Code § 2313 (defining express warranty).   Here, the SAC never provides the terms of any express

13   warranty allegedly breached by Defendants.   Rather, the SAC alleges generally that Defendants

14   "utilized advertising media . . . and expressly warranted . . . that said product was effective, proper

15   and safe for its intended use and consumption."   SAC ¶ 82.   Without knowing the terms of

16   Defendants' statements more specifically, the Court is unable to determine whether those

17   statements form an express warranty.   *See Maneely v. Gen. Motors Corp.*, 108 F.3d 1176, 1181

18   (9th Cir. 1997) (finding advertisements "make no explicit guarantees" and thus can not form the

19   basis for an express warranty claim); *T&M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*, 83

20   F. Supp. 3d 855, 875 (N.D. Cal. 2015) ("[A] plaintiff must provide 'specifics' about what the

21   warranty statement was, and how and when it was breached).

22          Accordingly, the SAC fails to state a claim for breach of express warranty, and the Court

23   GRANTS Defendants' motions to dismiss this claim.   Because Plaintiffs may be able to cure the

24   deficiencies in the SAC by alleging additional facts in support of this claim, the Court grants leave

25   to amend.   *See Lopez*, 203 F.3d at 1127 (holding that "a district court should grant leave to amend

26   . . . unless it determines that the pleading could not be cured by the allegation of other

27   facts" (internal quotation marks omitted)).

28

Case No. 15-CV-04787-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

### F.  Breach of Implied Warranty

Next, the Court addresses Ferrari's fourth cause of action, for breach of the implied warranty of merchantability.  The implied warranty of merchantability provides, in part, that goods must be "fit for the ordinary purposes for which such goods are used."  Cal. Com. Code § 2314(c).  The implied warranty of merchantability does not "impose a general requirement that goods precisely fulfill the expectation of the buyer.  Instead, it provides for a minimum level of quality." *Elias v. Hewlett-Packard Co.*, 950 F. Supp. 2d 1123, 1130 (N.D. Cal. 2013) (quoting *Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1296 (1995)).  At the same time, this does not mean the alleged defect must preclude any use of the product at all.  *See Isip v. Mercedes-Benz USA, LLC*, 155 Cal. App. 4th 19, 27 (2007) ("We reject the notion that merely because a vehicle provides transportation from point A to point B, it necessarily does not violate the implied warranty of merchantability.  A vehicle that smells, lurches, clanks, and emits smoke over an extended period of time is not fit for its intended purpose.").  Rather, fitness for the ordinary purpose is shown "if the product is in safe condition and substantially free of defects." *Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297, 1303 (2009) (internal quotation marks omitted).

Defendants contend that the SAC fails to state a breach of implied warranty claim because the SAC does not allege that any defect in Interfase caused Ferrari's injuries.  NP Mot. at 10; ProThera Mot. at 4–6.  This argument is unavailing.  As discussed in Section III.A, the SAC adequately alleges that Interfase was contaminated with chloramphenicol; that Ferrari consumed the contaminated Interfase; and that Ferrari's injuries were caused by the contaminated Interfase.

Natural Partners also contends that the SAC fails to allege the ordinary purpose of Interfase and that the recalled Interfase was unfit for that ordinary purpose.  NP Mot. at 10.  As to the ordinary purpose of Interfase, however, the SAC specifically alleges that "Plaintiff Ferrari took Interfase for its labeled purpose," which is "to assist with side effects of antibiotic-induced microflora intestinal imbalance."  SAC ¶ 29.  The product monograph, apparently written by Klaire Labs, a division of ProThera, indicates that Interfase "is designed for persons who wish to normalize their intestinal microflora and achieve optimal gastrointestinal function."  *Id.* Ex. G.  In

19

United States District Court
Northern District of California

United States District Court
Northern District of California

1    other words, Interfase's ordinary purpose is to "encourage formation of healthy intestinal

2    microbial communities." *Id.*  Natural Partners does not dispute—or even acknowledge—these

3    allegations.

4         As to whether the recalled Interfase was unfit for its ordinary purpose, the SAC alleges that

5    Interfase was recalled because certain batches of Interfase were contaminated with "small

6    quantities of the antibiotic chloramphenicol." *Id.* ¶¶ 16–17, Ex. H.  Chloramphenicol is a

7    carcinogen that is also known to cause other adverse side effects, including unusual bleeding,

8    unusual bruising, hypotension, cardiac collapse, abdominal pain, and liver damage. *Id.* ¶¶ 18, 30,

9    33.  In addition, chloramphenicol "exacerbates gastrointestinal conditions and harms the intricate

10   microbiome." *Id.* ¶ 29.  Thus, Interfase contaminated with chloramphenicol would not "encourage

11   formation of healthy intestinal microbial communities," *id.* Ex. G, and thus "did not conform to

12   expectations regarding ordinary use," *Stearns v. Select Comfort Retail Corp.*, 2009 WL 1635931,

13   at *8 (N.D. Cal. June 5, 2009).  Further, the contaminated Interfase was not in "safe condition and

14   substantially free of defects." *Mexia*, 174 Cal. App. 4th at 1303.  Accordingly, the Court

15   concludes that the SAC adequately alleges that the contaminated Interfase was unfit for the

16   ordinary purpose of improving gastrointestinal health, and that ingesting the contaminated

17   Interfase caused Ferrari's injuries.  The Court DENIES Defendants' motions to dismiss Ferrari's

18   claim for breach of the implied warranty of merchantability.

19        **G. Loss of Consortium**

20        The fifth cause of action alleges loss of consortium on behalf of LaBrash.  A loss of

21   consortium claim seeks "to compensate for the loss of the companionship, affection and sexual

22   enjoyment of one's spouse." *Molien v. Kaiser Found. Hosps.*, 27 Cal. 3d 916, 932 (1980).  To

23   state a claim for loss of consortium, a "marital spouse[] must allege that their partner suffered an

24   injury that is 'sufficiently serious and disabling to raise the inference that the conjugal relationship

25   is more than superficially or temporarily impaired.'" *Estate of Tucker ex rel. Tucker v. Interscope

26   Records, Inc.*, 515 F.3d 1019, 1039 (9th Cir. 2008) (quoting *Molien*, 27 Cal. 3d at 932–33).  "A

27   cause of action for loss of consortium is, by its nature, dependent on the existence of a cause of

28

20

United States District Court
Northern District of California

1  action for tortious injury to a spouse." *LeFiell Mfg. Co. v. Superior Court*, 55 Cal. 4th 275, 284–

2  85 (2012).

3        Defendants do not contest that all four of Ferrari's underlying claims may serve as the

4  basis for LaBrash's loss of consortium claim.  *See* NP. Mot. at 2, 11 (noting LaBrash's claim "is

5  dependent on the first four claims for relief alleging Ferrari's harm").  Defendants argue that

6  LaBrash's loss of consortium claim fails as a matter of law because it is derivative of Ferrari's

7  claims, and all of Ferrari's claims must be dismissed.  *Id.* at 11; ProThera Mot. at 7.  Accordingly,

8  consistent with the Court's other rulings in this order, the Court GRANTS with leave to amend

9  Defendants' motions to dismiss LaBrash's loss of consortium claim to the extent that LaBrash's

10  claim derives from Ferrari's claim against Defendants for express warranty or from Ferrari's claim

11  against Natural Partners for the negligent design, manufacture, and testing of Interfase.  Also

12  consistent with the Court's other rulings in this order, the Court DENIES Defendants' motions to

13  dismiss LaBrash's loss of consortium claim to the extent that the claim is predicated upon

14  Ferrari's claims for strict liability against Defendants, negligent failure to warn against Natural

15  Partners, negligence against ProThera Defendants, and breach of the implied warranty of

16  merchantability against Defendants.

17      **H.  Damages**

18        Lastly, ProThera Defendants, joined by Natural Partners, move to dismiss the SAC in its

19  entirety on the grounds that Plaintiffs' claim for $60 million in damages is "implausible on its

20  face."  ProThera Mot. at 7.  However, ProThera Defendants cite no case in which a complaint was

21  dismissed on the basis that the plaintiffs may ultimately recover less than the requested damages.

22  "[A] Rule 12(b)(6) motion will not be granted merely because a plaintiff requests a remedy to

23  which he or she is not entitled.  It need not appear that plaintiff can obtain the specific relief

24  demanded as long as the court can ascertain from the face of the complaint that some relief can be

25  granted."  *Rodriguez v. Serv. Emps. Int'l*, 755 F. Supp. 2d 1033, 1053 (N.D. Cal. 2010) (internal

26  quotation marks, citations, and brackets omitted) (quoting *Massey v. Banning Unified Sch. Dist.*,

27  256 F. Supp. 2d 1090, 1092 (C.D. Cal. 2003)); Cal. Prac. Guide Fed. Civ. Pro. Before Trial Ch. 9-

28  

Case No. 15-CV-04787-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

1   D, 9:230 (2016).

2   In the instant case, Plaintiffs have alleged severe medical problems, emotional and

3   psychological distress, loss of income, permanent disability, and loss of consortium.  SAC ¶¶ 39,

4   67, 76–79, 101.  Plaintiffs, if successful on their claims, will be entitled to compensatory damages

5   for these harms, and the amount of Plaintiffs' damages "is a question of fact subject to proof."

6   *Forte Capital Partners v. Harris Cramer*, 2007 WL 1430052, at *8 (N.D. Cal. May 14, 2007).

7   That Plaintiffs may ultimately prove less than $60 million in damages is not a basis for dismissal.

8   *See id.* (rejecting defendants' argument that "the Court should dismiss the operative complaint

9   because Plaintiff's claim for damages is based 'solely on speculation and conjecture'") (citing

10  *NGV Gaming, Ltd. v. Upstream Point Molate, LLC*, 355 F. Supp. 2d 1061, 1067 (N.D. Cal.

11  2005)).  Accordingly, the Court DENIES ProThera Defendants' motion to dismiss on the basis

12  that the requested damages are implausible.

13  **I.  More Definite Statement**

14  Finally, Defendants move for a more definite statement pursuant to Federal Rule of Civil

15  Procedure 12(e).  NP Mot. at 11–12; ProThera Mot. at 8–9.  Under Rule 12(e), "[a] party may

16  move for a more definite statement of a pleading to which a responsive pleading is allowed but

17  which is so vague or ambiguous that the party cannot reasonably prepare a response."  Rule 12(e)

18  motions should be granted only on "rare occasions."  *See Bautista v. L.A. Cty.*, 216 F.3d 837, 843

19  n.1 (9th Cir. 2000).; *see also Wright v. City of Santa Cruz*, 2014 WL 217089, at *3 (N.D. Cal. Jan.

20  17, 2014) (stating that motions pursuant to Rule 12(e) are generally "viewed with disfavor and are

21  rarely granted").  The burden on a Rule 12(e) motion is on the moving party.  *J&J Sports Prods.,*

22  *Inc. v. Nguyen*, 2014 WL 60014, at *7 (N.D. Cal. Jan. 7, 2014).

23  In the instant case, Defendants argue that Plaintiffs need to provide greater detail about

24  Ferrari's specific injuries, the causal connection between Ferrari's injuries and the contaminated

25  Interfase, and the individual actions taken by each defendant.  As to the claims that the Court has

26  dismissed, Defendants' motion for a more definite statement is moot.  *See SriCom, Inc. v.*

27  *EbisLogic, Inc.*, 2012 WL 4051222, at *9 (N.D. Cal. Sept. 13, 2012) (denying motion for a more

28

United States District Court
Northern District of California

22

1   definite statement as moot when the motion pertained only to claims that have been dismissed);

2   *McAfee v. Francis*, 2011 WL 3293759, at *3 (N.D. Cal. Aug. 1, 2011) (denying as moot motion

3   for a more definite statement when the court granted a motion to dismiss).

4        As to the claims that the Court has not dismissed, the SAC identifies the legal and factual

5   basis for Plaintiffs' causes of action, and states that each cause of action is asserted against all

6   Defendants.  This is sufficient to enable Defendants to respond to the SAC.  *Cf. San Jose Charter*

7   *of the Hell's Angels Motorcycle Club*, 1999 WL 1211672, at *12 (denying Rule 12(e) motion

8   because "[t]o the extent that Defendants would like Plaintiffs to provide them with more specific

9   allegations or evidence of causation, it seems that discovery would better accomplish this goal

10  than granting a Rule 12(e) motion for a more definite statement").  The Court therefore DENIES

11  Defendants' motions for a more definite statement under Rule 12(e).

12  **IV.    CONCLUSION**

13       For the foregoing reasons, the Court GRANTS in part and DENIES in part Defendants'

14  motions to dismiss as follows:

15  - As to the first cause of action for strict liability, Defendants' motions to dismiss are

16  DENIED.

17  - As to the second cause of action for negligence, ProThera Defendants' motion to

18  dismiss is DENIED.  Natural Partners's motion to dismiss is GRANTED with leave

19  to amend to the extent that the negligence claim is based on negligent design,

20  manufacture, and testing of Interfase.  However, Natural Partners's motion to

21  dismiss is DENIED to the extent that the claim is based on failure to warn.

22  - As to the third cause of action for breach of express warranty, Defendants' motions

23  to dismiss are GRANTED with leave to amend.

24  - As to the fourth cause of action for breach of the implied warranty of

25  merchantability, Defendants' motions to dismiss are DENIED.

26  - As to the fifth cause of action for loss of consortium, Defendants' motions to

27  dismiss are GRANTED with leave to amend to the extent the loss of consortium

United States District Court
Northern District of California

28

23

claim derives from Ferrari's claim for breach of express warranty and Ferrari's

claim against Natural Partners for negligent design, manufacture, and testing of

Interfase.  Defendants' motions to dismiss are DENIED to the extent the loss of

consortium claim derives from Ferrari's claims for strict liability, negligent failure

to warn against Natural Partners, negligence against ProThera Defendants, and

breach of the implied warranty of merchantability.

Should Plaintiffs elect to file an amended complaint curing the deficiencies identified in

this order, Plaintiffs shall do so within thirty days of this order.  Failure to meet this thirty-day

deadline or failure to cure the deficiencies identified herein will result in a dismissal with

prejudice.  Plaintiffs may not add new causes of actions or parties without leave of the Court or

stipulation of the parties pursuant to Federal Rule of Civil Procedure 15.

**IT IS SO ORDERED.**

Dated: August 23, 2016

_Lucy H. Koh_
_____
LUCY H. KOH
United States District Judge

United States District Court
Northern District of California

Case No. 15-CV-04787-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS