UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LISA FRANCESCA FERRARI,<br><br>  Plaintiff,<br><br>  v.<br><br>NATURAL PARTNER, INC., et al.,<br><br>  Defendants. | Case No. 15-CV-04787-LHK<br><br>**ORDER GRANTING WITH PREJUDICE IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 76 |

Plaintiff Lisa Francesca Ferrari ("Plaintiff") filed this products liability action against Defendants ProThera, Inc. ("ProThera"), Klaire Labs, and Soho Flordis International ("Soho Flordis") (collectively, "ProThera Defendants"), as well as against Natural Partners, Inc. ("Natural Partners") (together with ProThera Defendants, "Defendants"). Before the Court is Defendants' motion to dismiss Plaintiff's Third Amended Complaint ("TAC"). ECF No. 76. The Court finds the motion suitable for resolution without oral argument and therefore VACATES the motion hearing scheduled for January 12, 2017 at 1:30 p.m. The January 12, 2017 case management conference is hereby CONTINUED to April 12, 2017 at 2:00 p.m. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court GRANTS WITH PREJUDICE in part and DENIES in part the motion to dismiss.

## I. BACKGROUND

### A. Factual Background

This case arises out of Plaintiff's alleged consumption of the enzyme supplements Interfase 60 and Interfase 120 (collectively, "Interfase"). Interfase is manufactured by Defendant ProThera, which was acquired by Defendant Soho Flordis in 2013. ECF No. 73 ("TAC") ¶¶ 5, 11. Defendant Klaire Labs, a division of ProThera, labels Interfase. *Id.* ¶¶ 11.

From March 30, 2012 to October 18, 2013, Plaintiff orally ingested four capsules of Interfase per day. *Id.* ¶¶ 12, 32. Plaintiff purchased Interfase from ProThera and distributor Defendant Natural Partners. *Id.* ¶ 11. Plaintiff took Interfase for its labeled purpose, which is "to normalize . . . intestinal microflora and achieve optimal gastrointestinal function." *Id.* ¶¶ 22, 99.

Plaintiff stopped ingesting Interfase upon receiving a recall notice from Natural Partners and ProThera (the "First Recall Notice") on October 18, 2013. *Id.* ¶ 29. The First Recall Notice recalled certain batches of Interfase that were contaminated with "small quantities of the antibiotic chloramphenicol." *Id.* ¶ 30, Ex. 8. According to the TAC, chloramphenicol is a carcinogen that is also known to cause other adverse side effects, including unusual bleeding, unusual bruising, hypotension, cardiac collapse, abdominal pain, and liver damage. *Id.* ¶¶ 24, 50. Chloramphenicol is not approved for any oral use by the U.S. Food and Drug Administration ("F.D.A."). *Id.* ¶ 14. The First Recall Notice stated, "Adverse health consequences related to the use of these products are highly unlikely, but supplements should not contain any detectable amounts of this material." *Id.* ¶ 35; Ex. 8.

After receiving the First Recall Notice, Plaintiff "carefully verified that the Klaire Labs Interfase bottles, from which she had been consuming the Interfase capsules, were among the recalled lots." *Id.* ¶ 36. Pursuant to the instructions in the First Recall Notice, Plaintiff returned the recalled Interfase bottles to Natural Partners. *Id.* ¶ 36.

On November 8, 2013, ProThera emailed Plaintiff with additional information about the recall (the "Second Recall Notice"). *Id.* ¶ 40. ProThera represented that the recall was "Class III," which means that "exposure [is] not likely to cause adverse health consequences." *Id.* ¶ 40, Ex. 9.

2
Case No. 15-CV-04787-LHK
ORDER GRANTING WITH PREJUDICE IN PART AND DENYING IN PART MOTION TO DISMISS

However, in the week of November 20, 2013, the F.D.A. publicly reported the recall as "Class II." *Id.* Ex. 11. In contrast to a Class III recall, a Class II recall involves "a situation in which use of or exposure to a violative product may cause temporary or medically reversible adverse health consequences or where the probability of serious adverse health consequences is remote." *Id.* ¶ 42, Ex. 12.

On November 22, 2013, Plaintiff received another recall notice from Natural Partners and ProThera (the "Third Recall Notice"). *Id.* ¶ 50, Ex. 10. The Third Recall Notice, like the First Recall Notice, stated that, "[a]dverse health consequences related to the use of these products is highly unlikely, but supplements should not contain any detectable amounts of this material." *Id.*

Prior to receiving the First Recall Notice, Plaintiff began suffering from a variety of ailments "consistent with chloramphenicol poisoning," including "acute onset incessant tinnitus, abdominal bloating, poor appetite, unusual bruising, [and] liver pain." *Id.* ¶ 33–34. According to the SAC, the Recall Notices misled Plaintiff's doctor that chloramphenicol was unlikely to be the cause of Plaintiff's injuries. *Id.* ¶¶ 37, 51. By way of example, on one visit, Plaintiff's doctor quoted from the First Recall Notice that it was "highly unlikely" adverse health consequences would occur from ingesting the contaminated Interfase. *Id.* ¶ 37. Consequently, there was a delay in the identification of chloramphenicol poisoning as the cause of Plaintiff's injuries, which led to "worsening [of] her symptoms, injuries and damages." *Id.* ¶ 80.

**B. Procedural History**

Plaintiff, along with her husband Joseph LaBrash, filed this action pro se on October 16, 2015. ECF No. 1. ProThera Defendants moved to dismiss the complaint on February 5, 2016, ECF No. 8, and Natural Partners moved to dismiss on February 25, 2016, ECF No. 15.

On February 25, 2016, Plaintiff and LaBrash filed a First Amended Complaint ("FAC"). ECF No. 24. On March 15, 2016, pursuant to the stipulation of the parties, the Court granted Plaintiff and LaBrash leave to file a Second Amended Complaint ("SAC"). ECF No. 33. That same day, in light of the FAC and the anticipated SAC, the Court denied Defendants' motions to dismiss as moot. ECF No. 34.

Plaintiff and LaBrash filed the SAC on April 15, 2016. ECF No. 37. The SAC alleged five causes of action. Specifically, Plaintiff asserted claims for (1) strict liability based on design defect and manufacturing defect, (2) negligence based on design defect and manufacturing defect, (3) breach of express warranty, and (4) breach of implied warranty. *Id.* ¶¶ 61–99. LaBrash asserted one cause of action for loss of consortium. *Id.* ¶¶ 100–01. On May 13, 2016, Defendants filed two motions to dismiss the SAC. The Court granted in part and denied in part these motions on August 23, 2016. ECF No. 72 ("August 23, 2016 Order"). Specifically, the Court granted the motions to dismiss as to the SAC's express warranty claims and as to the SAC's negligent design claims against Natural Partners. ECF No. 72, at 23. The Court also dismissed LaBrash's derivative claims for loss of consortium to the extent that the claims relied on an express warranty claim or a negligent design claim against Natural Partners. *Id.* at 23–24.

Following the August 23, 2016 Order, Plaintiff filed a Third Amended Complaint ("TAC") through an attorney on September 23, 2016. ECF No. 73. Although the August 23, 2016 Order stated that Plaintiff "may not add new causes of actions or parties without leave of the Court or stipulation of the parties pursuant to Federal Rule of Civil Procedure 15," ECF No. 72, at 24, the TAC added a new defendant, Cal-India Foods International ("Cal-India"), and a new claim against Cal-India and ProThera for negligent misrepresentation, TAC ¶ 6, 90–96.

On October 7, 2016, Defendants filed the instant motion to dismiss. ECF No. 76. Plaintiff filed an opposition on October 31, 2016, ECF No. 79, and Defendants replied on November 7, 2016, ECF No. 84. At a case management conference on November 9, 2016, the parties stipulated to strike the negligent misrepresentation cause of action from the TAC and to add Cal-India as a defendant. ECF No. 86. On December 9, 2016, Cal-India filed its own motion to dismiss. After an opposition on December 14, 2016, ECF No. 90, and a reply on December 19, 2016, ECF No. 91, Plaintiff and Cal-India filed a stipulation of dismissal as to Cal-India, mooting the motion to dismiss, ECF No. 92. Thus, the remaining Defendants are the ProThera Defendants and Natural Partners, all of whom have joined in the instant motion to dismiss.

4

Case No. 15-CV-04787-LHK
ORDER GRANTING WITH PREJUDICE IN PART AND DENYING IN PART MOTION TO DISMISS

## II.    LEGAL STANDARD

### A. Rule 12(b)(6) Motion to Dismiss

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6). Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The Court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

### B. Leave to Amend

If the Court concludes that the complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15. . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez*,

203 F.3d at 1127 (ellipsis in original). Nonetheless, a district court may deny leave to amend a complaint due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

## III. DISCUSSION

Defendants' motion to dismiss rests on three grounds. First, Defendants move to dismiss the TAC in its entirety because the TAC was untimely filed. Second, Defendants move to dismiss Plaintiff's claims for design defect for failure to state a claim under Rule 12(b)(6). Third, Defendants move to dismiss the negligent misrepresentation cause of action from the TAC on the ground that the negligent misrepresentation cause of action was improperly added to the TAC in violation of the Court's August 23, 2016 order. As discussed above, at the November 9, 2016 case management conference, the parties stipulated to dismissal of Plaintiff's negligent misrepresentation claim. Therefore, the Court DENIES AS MOOT Defendants' motion to dismiss Plaintiff's negligent misrepresentation claim. The Court considers the other two grounds of Defendants' motion to dismiss in turn.

### A. Untimeliness

In their motion to dismiss, Defendants argue that Plaintiff's TAC, which was filed on September 23, 2016, was untimely and thus should be dismissed in its entirety. Specifically, Defendants note that in the Court's August 23, 2016 order granting in part and denying in part Defendants' motions to dismiss, the Court stated that "[s]hould Plaintiffs elect to file an amended complaint curing the deficiencies identified in this order, Plaintiffs shall do so within thirty days of this order." ECF No. 72, at 24. Despite this order, Plaintiff filed her TAC on September 23, 2016, 31 days after the Court's August 23, 2016 order.

Similarly, in their reply brief, Defendants note that Plaintiff filed her opposition to the motion to dismiss on October 31, 2016, ten days after the deadline established by Civil Local Rule 7-3(a), which states that "[t]he opposition must be filed and served not more than 14 days after the

motion was filed." Plaintiff did not seek leave to file an untimely opposition, nor did she otherwise identify any good cause for the delay.

This is not the first time that Plaintiff has failed to meet the Court's deadlines. As discussed in the August 23, 2016 Order, Plaintiff's oppositions to Defendants' first round motions to dismiss were also filed late. ECF No. 72, at 4. Nevertheless, in the August 23, 2016 Order, the Court found that despite the fact that Plaintiff's oppositions were filed late, consideration of the motions on the merits was appropriate. *Id.*

Plaintiff's attorney explains the failure to timely file the TAC by stating that "[t]he ECF system did not provide him with notice of the Order" granting the first round of motions to dismiss. Opp. at 2. However, as Defendants point out, the Notice of Electronic Filing for the August 23, 2016 Order shows that the Notice was sent on August 23, 2016 to two email addresses that Plaintiff's attorney provided as his contact information. ECF Nos. 64, 84-1. Additionally, Plaintiff offers no explanation for the late filing of her opposition to the instant motion to dismiss.

Nevertheless, despite Plaintiff's failure to meet these deadlines, the Court finds that resolving the instant motion to dismiss on the merits is the appropriate course of action. Resolution on the merits, including consideration of the untimely TAC and opposition, is more likely to "secure the just, speedy, and inexpensive determination" of this case and therefore advance the goals of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 1; *see also Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (holding that the purpose of pleading rulings is "to facilitate decision on the merits, rather than on the pleadings or technicalities"). Additionally, the Court finds that Defendants are not prejudiced by Plaintiff's late filing of the TAC or opposition to the instant motion to dismiss. Accordingly, Defendant's motion to dismiss the TAC in its entirety is DENIED, and the Court will consider Plaintiff's untimely opposition to the instant motion to dismiss.

However, the Court warns that if any of Plaintiff's future filings are late or otherwise fail to comply with the Civil Local Rules, the Court will strike the filings and may invite a motion for sanctions.

7
Case No. 15-CV-04787-LHK
ORDER GRANTING WITH PREJUDICE IN PART AND DENYING IN PART MOTION TO DISMISS

### B. Design Defect Claims

In their motion to dismiss, Defendants argue that Plaintiff's design defect claims must be dismissed for failure to state a claim. Specifically, Defendants argue that although design defect claims "by definition concern[] something that is *intended* or *planned*," Plaintiff has alleged only that chloramphenicol was *unintentionally* introduced during the manufacturing process. Mot. at 4.

At the outset, the Court notes that Plaintiff's allegations regarding design defect in the TAC are different from Plaintiff's allegations regarding design defect in the SAC. In the SAC, Plaintiff alleged that "Defendants negligently formulated its product Interfase by including ingredients such as chloramphenicol that is [sic] banned for oral use by F.D.A." SAC ¶ 66(a). Thus, the SAC appeared to allege that Defendants intentionally included chloramphenicol as an ingredient in Interfase. In the TAC, on the other hand, this allegation does not appear. Instead, in the TAC Plaintiff alleges that Defendants defectively "designed the Interfase product by failing to prevent the inclusion of the ingredient Chloramphenicol." TAC ¶ 74; *see also id.* ¶ 63. In their opposition to the instant motion to dismiss, Plaintiff clarifies that this allegation suggests that "Defendants did not *plan* to include the chloramphenicol contaminant in their product," but instead that the chloramphenicol was unintentionally introduced during the manufacturing process. Opp. at 3. Specifically, Plaintiff argues that Defendants used chloramphenicol to clean the vats in which the ingredients for Interfase were mixed, and that the residue from the cleaning inadvertently contaminated the Interfase product. *Id.* Indeed, consistent with this allegation, the TAC also contains a claim for manufacturing defect. TAC ¶¶ 64–65, 73–74.

Thus, both parties agree that the TAC alleges only that chloramphenicol was unintentionally introduced into Interfase during the manufacturing process, and not that Defendants intentionally included chloramphenicol in Interfase. Therefore, the Court must determine whether Plaintiff's allegation that Interfase was unintentionally contaminated with chloramphenicol during the manufacturing process states a tort claim for design defect.

Under California law, "[a] design defect . . . exists when the product is built in accordance with its intended specifications, but the design itself is inherently defective." *McCabe v. Am.*

8

*Honda Motor Co.*, 100 Cal. App. 4th 1111, 1120 (2002) (citing *Barker v. Lull Eng'g Co.*, 20 Cal. 3d 413, 429 (1978)); *see also*, *e.g.*, *Troup v. Toyota Motor Corp.*, 545 F. App'x 668, 669 (9th Cir. 2013) (citing *McCabe* for the same proposition). In contrast, if a product is defective because it "differs from the manufacturer's intended result," the product suffers from a "manufacturing or production defect." *Barker*, 20 Cal. 3d at 429. As explained in the Restatement (Third) of Torts, "[w]hereas a manufacturing defect consists of a product unit's failure to meet the manufacturer's design specifications, a product asserted to have a defective design meets the manufacturer's design specifications but raises the question whether the specifications themselves create unreasonable risks." Restatement (Third) of Torts: Prod. Liab. § 2 (1998); *see also Oswalt v. Resolute Indus., Inc.*, 642 F.3d 856, 860 (9th Cir. 2011) ("Since the Restatement (Third) was finalized in 1998, . . . we and other circuits have relied on it."). Thus, as part of a defective design claim, a plaintiff must make "a prima facie showing that the injury was proximately caused by the product's *design*." *Barker*, 20 Cal. 3d at 431 (emphasis added); *see also Pooshs v. Philip Morris USA, Inc.*, 904 F. Supp. 2d 1009, 1024 (N.D. Cal. 2012).

In the instant case, however, Plaintiff has not alleged that she was harmed by the design for Interfase. Indeed, Plaintiff concedes that Defendants' design specifications for Interfase did not call for the inclusion of chloramphenicol. Instead, Plaintiff alleges that she was harmed by a contaminant unintentionally introduced during the manufacturing process. *See Mitchell v. Lone Star Ammunition, Inc.*, 913 F.2d 242, 247 (5th Cir. 1990) (holding that the argument that "the manufacturing process is a 'design' . . . misconceives the significant distinction between manufacturing and design defects"). Thus, the design defect claim in the TAC lacks the essential allegation that the design of Interfase itself is inherently defective. Plaintiff has therefore failed to adequately state a claim for design defect.

Additionally, under California law there are two tests for a design defect claim. Specifically, a product is defective "(1) if the product has failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner, or (2) if, in light of the relevant factors discussed below, the benefits of the challenged design do not outweigh

the risk of danger inherent in such design." *Barker*, 20 Cal. 3d at 418. "In order to adequately state a claim" for design defect, a plaintiff must "identify which design defect theory is being utilized," and "allege facts to support the test that Plaintiff identifies." *Smith v. Pride Mobility Prod. Corp.*, 2016 WL 6393549, at *9 (N.D. Cal. Oct. 28, 2016) (internal quotation marks omitted); *see also In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices & Prod. Liab. Litig.*, 754 F. Supp. 2d 1208, 1220 (C.D. Cal. 2010) ("To meet the strictures of *Twombly* and *Iqbal*, Plaintiffs should identify which design defect theory is being utilized and allege facts to support that theory.").

In the instant case, however, Plaintiff has neither identified a test for design defect nor alleged any facts to support her theory of design defect. Instead, Plaintiff has merely stated generally that Defendants defectively "designed the Interfase product by failing to prevent the inclusion of the ingredient Chloramphenicol," TAC ¶ 74, and that "Defendants . . . designed Interfase in a manner that allowed their product to contain Chloramphenicol – a banned substance and known carcinogen," TAC 63. These allegations do not identify the theory of design defect that Plaintiff intends to assert, nor do these allegations provide supporting facts that "explain how the particular design" of the product caused Plaintiff's alleged harm. *Smith*, 2016 WL 6393549, at *9. Thus, the fact that Plaintiff has not identified either of the two tests for design defect or pled facts to support her theory is yet another basis for dismissing Plaintiff's design defect claims.

Therefore, the Court GRANTS WITH PREJUDICE Defendants' motion to dismiss Plaintiff's claims for design defect in both Plaintiff's strict liability and negligence causes of action. As Plaintiff has conceded, Defendants did not intentionally include chloramphenicol as an ingredient in Interfase. Opp. at 3. Thus, it would be futile to grant leave to amend Plaintiff's design defect claims. *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008). Additionally, Plaintiff has already included claims for manufacturing defect in the TAC. Specifically, Plaintiff alleges that Defendants "manufactured Interfase in a manner that allowed their Interfase product to contain Chloramphenicol." TAC ¶ 64. Thus, leave to amend is not warranted.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS WITH PREJUDICE Defendants' motion to dismiss Plaintiff's design defect claims, DENIES Defendants' motion to dismiss Plaintiff's complaint in its entirety based on untimely filing, and DENIES as moot Defendants' motion to dismiss Plaintiff's negligent misrepresentation cause of action.

**IT IS SO ORDERED.**

Dated: January 9, 2017

_____
LUCY H. KOH
United States District Judge